■ In the Matter of NORMAN SCHIBUK et al., Petitioners, v NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents. [733 NYS2d 801] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which, *inter alia*, sustained a personal income tax assessment imposed under Tax Law article 22.

The underlying dispute centers largely upon whether petitioners may be deemed New York residents for purposes of computing their personal income tax liability for tax year 1988. On this point, the record reflects that prior to 1988, petitioners resided in Armonk, an unincorporated community located in the Town of New Castle, Westchester County. Previously, in 1985, petitioners had purchased a second home located in Moretown, Vermont; pursuant to the terms of the underlying mortgage, petitioners had agreed that they would not occupy such premises as their legal residence. The mortgage on the Vermont property apparently was discharged in May 1987 and, in October 1987, petitioners placed their Armonk residence on the market. According to petitioners, they began moving into the Vermont residence in June 1988 and enrolled their children in a local school in September 1988. In October 1988, petitioners entered into a contract for the sale of the Armonk residence, resulting in a closing in December 1988. Petitioners thereafter filed Federal income tax returns for tax years 1988 through 1990 listing a Moretown, Vermont address. Although petitioners filed a Vermont income tax return for 1988, they did not file a New York part-year resident income tax return for 1988 until October 1989.

Beginning in December 1991, the Department of Taxation and Finance conducted a field audit of petitioners' 1988 through 1990 Federal tax returns. The audit also focused on the treatment afforded certain partnership income received by petitioner Norman Schibuk from Compensation Resources Partners (hereinafter CRP) during the relevant time period. Ultimately, in 1994, petitioners were served with a notice of deficiency for tax year 1988 for $105,010.50 in unpaid taxes, plus $50,474.69 in interest and $56,740.50 in penalties, totaling $212,225.69. Petitioners thereafter waived a hearing, and the matter proceeded upon the documentary submissions tendered by petitioners and the Department.

An Administrative Law Judge (hereinafter ALJ) subsequently concluded, *inter alia*, that petitioners were properly as-

sessed as residents for the entire tax year because they maintained a permanent place of abode within the State and failed to prove that they spent 183 days or fewer in the State during 1988 (*see*, Tax Law § 605 [b] [1] [B]). The ALJ also concluded that the Department properly accrued to the resident portion of tax year 1988 the deferred partnership payments received from CRP in 1989 and 1990 (*see*, Tax Law former § 638 [c]). After making certain adjustments to the tax due, the ALJ sustained the notice of deficiency, together with the penalty assessed. Following oral argument, respondent Tax Appeals Tribunal upheld the ALJ's decision, prompting petitioners to commence this proceeding to challenge the Tribunal's determination.

Turning first to the issue of petitioners' residency status during 1988, Tax Law § 605 (b) (1) (B) provides, in relevant part, that a "resident individual" is one "who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than [183] days of the taxable year in this state." A determination of a taxpayer's residency status is key, for while nonresidents are taxed only on their New York source income (*see*, Tax Law § 631), residents are taxed on all of their income, both from within and without the State (*see*, Tax Law § 612; *see also*, *Matter of Tamagni v Tax Appeals Tribunal*, 91 NY2d 530, 535, *cert denied* 525 US 931). Where, as here, a taxpayer's residency is in dispute, the taxpayer bears the burden of proving that he or she did not spend more than 183 days in New York during the tax year in question (*see*, *Matter of Wachsman v New York State Commr. of Taxation & Fin.*, 241 AD2d 708, 709-710).

Preliminarily, the record as a whole supports the finding that petitioners changed their domicile in September 1988, at which point petitioners registered and enrolled their children in the local Vermont school district. Although petitioners argue that the documentary evidence they submitted conclusively details their use of the Vermont residence as their primary residence during the summer of 1988, such proof is not inconsistent with their use of such residence as a second home. Hence, we discern no basis upon which to disturb the Tribunal's findings in this regard.

As to the issue of whether petitioners maintained a permanent place of abode in this State during the relevant time period, the record indicates that although petitioners' Armonk residence was on the market during 1988, they did not enter into a contract for the sale of such property until October 1988

and did not close until December 1988. Additionally, there does not appear to be any dispute that utility service was maintained at the Armonk residence during this time period, and petitioners concede in their brief that some furnishings remained there as well. Under such circumstances, we have no quarrel with the proposition that the Armonk residence constituted a "permanent place of abode" within the meaning of Tax Law § 605 (b) (1) (B).

We also agree with the Tribunal that petitioners failed to demonstrate that they spent 183 days or fewer in the State during 1988. To the extent that petitioners contend that it was unfair to expect them to demonstrate their absence from the State during this period, they clearly were on notice that the number of days they spent in the State during 1988 was in issue and had every opportunity to offer proof in this regard. Indeed, petitioners bore the burden of proof on this point (*see, Matter of Wachsman v New York State Commr. of Taxation & Fin., supra*). Having elected to waive a hearing and having failed to tender sufficient evidence to document their activities during 1988, petitioners cannot now be heard to complain. We therefore decline to disturb the Tribunal's conclusion that petitioners were taxable as State residents during 1988.

Equally unpersuasive is petitioners' assertion that the Tribunal erred in determining that the deferred partnership payments received in 1989 and 1990 properly accrued to petitioners' 1988 taxable income. Tax Law former § 638 (c), now codified as Tax Law § 639 (a), provided, in relevant part, as follows: "If an individual changes his status from resident to nonresident he shall, regardless of his method of accounting, accrue to the portion of the taxable year prior to such change of status any items of income, gain, loss or deduction accruing prior to the change of status, if not otherwise properly entering into his federal adjusted gross income for such portion of the taxable year or a prior taxable year under his method of accounting" (Tax Law former § 638 [c] [1]). (*Cf., Matter of Blanco v Commissioner of Taxation & Fin.*, 282 AD2d 896, *lv denied* 96 NY2d 719.) " '[U]nder an accrual method, income is to be included for the taxable year when all the events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy' " (*id.*, at 897, quoting 26 CFR 1.446-1 [c] [1] [ii] [A]).

As applied to the matter before us, the record reveals that petitioners' right to the deferred partnership payments received in 1989 and 1990 from CRP accrued in 1986 when CRP entered into the buyout agreement with Management Partnership

(hereinafter MP), whereby CRP agreed to sell its 10% interest in MP for a total sale price of $4 million.* The agreement provided that $1 million would be paid within 30 days, with the remaining $3 million paid over the next five years as deferred guaranteed payments. To the extent that petitioners argue that such payments were not "guaranteed" but were in fact contingent upon Schibuk performing certain services for MP as set forth in Schibuk's employment agreement, we need note only that such document is not included in the record on review. In any event, we are satisfied that the record as a whole supports the Tribunal's treatment of the income at issue.

Finally, as to the issue of penalty, the case law makes clear that "claimed ignorance of the law and reliance on erroneous professional advice * * * does not constitute reasonable cause to justify abatement of the tax penalty" (*Matter of Gordon v Tax Appeals Tribunal*, 243 AD2d 828, 830-831; *see, Matter of McGaughey v Urbach*, 268 AD2d 802, 803). Petitioners' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Cardona, P. J., Spain, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

* Schibuk executed the agreement on behalf of CRP.